FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:13 am, Jan 12, 2026
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Brandon Farmer SR.,

K.M. Farmer (minor child), and

B.C. Farmer JR. (minor child),

(Plaintiff(s),

V.

> **COMPLAINT FOR VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS UNDER 42 U.S.C. § 1983, CONSPIRACY TO DEPRIVE OF RIGHTS UNDER 42 U.S.C. § 1985, AND STATE LAW CLAIMS**

MARISSA WATSON, Social Worker II, sued Individually and in her Official Capacity,

JEANNA ZRELAK, Social Worker, sued Individually and in her Official Capacity,

MERRISSA SCRANTON, Social Worker Supervisor, sued Individually and in her Official Capacity.

DENISE LAJEUNESSE, Social Casework Manager, sued Individually and in her Official Capacity.

HEATHER O'HAYRE, Larimer County Department o  Human Services Director, sued Individually and in her Official Capacity.

THOMAS SELKEN, Guardian ad Litem, sued Individually and in his Official Capacity.

JENNIFER STEWART, County Attorney, sued Individually and in her Official Capacity.

LINDA CONNORS, Magistrate, Larimer County, sued Individually and in her Official Capacity; and

LARIMER COUNTY DEPARTMENT OF HUMAN SERVICES, In its Official Capacity,

(De endant(s).

COMPLAINT FOR VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS UNDER 42 U.S.C. § 1983, CONSPIRACY TO DEPRIVE OF RIGHTS UNDER 42 U.S.C. § 1983, AND STATE LAW CLAIMS

## I. INTRODUCTION AND NATURE OF THE ACTION

1. This action is brought pursuant to 42 U.S.C. § 1983  or the deprivation o  Plaintiffs'  undamental constitutionally protected rights, including their Fourteenth Amendment rights to  amilial association, substantive due process, and procedural due process, as well as their Fi th Amendment rights, by state actors operating under color o  state law. Plaintiffs also assert state law claims under the Court's supplemental jurisdiction.

2. This Complaint arises  rom a shocking series o  events orchestrated by De endants— employees and officials o  the Larimer County Department o  Human Services ("LCDHS"), the Larimer County Attorney's Office, a court-appointed Guardian ad Litem, and a state Magistrate—that resulted in the unlaw ul seizure o  minor children K.M. Farmer and B.C. Farmer Jr. (collectively, the "Minor Children")  rom the care and custody o  their biological  ather, Brandon Farmer Sr. ("Mr. Farmer").

3. De endants, acting in concert, conspired and engaged in a pattern o  misconduct that included:  abricating evidence; submitting  alse statements to the court;  ailing to conduct proper investigations; deliberately ignoring material  acts; utilizing unlicensed or noncertified social workers;  ostering a biased judicial process through undisclosed conflicts o  interest; denying Mr. Farmer a  air hearing; and ultimately, alienating the Minor Children  rom their  ather and subjecting B.C. to a nonemergency medical procedure without Mr. Farmers knowledge or consent. CASA volunteers did not contact Mr. Farmer or attempt to contact him. The Larimer County Department o  Human Services has a history and proven record o  this type o  behavior and misconduct with no accountability.

4. The actions and inactions o  the De endants represent an egregious abuse o  power, a pro ound dereliction o  pro essional and ethical duties, and a systemic disregard  or the constitutional and statutory rights o  parents and children. These violations were not isolated incidents but were the product o  systemic  ailures and deliberate indifference within LCDHS and Larimer County,  or which the County and Department are liable under Monell v. Department o  Social Services, 436 U.S. 658 (1978). The MOU — signed by **every institutional actor except the parents** — requires "cooperation," "coordination," and

alignment with DHS policies as a **condition of continued funding**. This arrangement creates a **built-in financial incentive**  or all actors to support DHS positions, regardless o  the  acts, the Constitution, or the best interests o  the children.

5. Plaintiffs seek declaratory and injunctive relie , as well as compensatory and punitive damages,  or the pro ound and lasting harm inflicted upon them.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiffs'  ederal claims pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws o  the United States, specifically 42 U.S.C. §§ 1983.

7. This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367, as these claims  orm part o  the same case or controversy and derive  rom a common nucleus o  operative  acts.

8. Venue is proper in the United States District Court  or the District o  Colorado pursuant to 28 U.S.C. § 1391(b), as a substantial part o  the events or omissions giving rise to the claims occurred within this district, and all De endants reside or are located in Colorado.

## III. PARTIES

### A. Plaintiffs:

9. Brandon Farmer Sr. is an adult resident o  Milliken, Weld County, Colorado, and the biological  ather o  K.M. Farmer and B.C. Farmer Jr. He brings this action on his own behal  and as next  riend o  his minor children.

10. K.M. Farmer is a minor child, 15 years o  age, residing in Weld County, Colorado. She is the daughter o  Brandon Farmer Sr.

11. B.C. Farmer Jr. is a minor child, 13 years o  age, residing in Weld County, Colorado. He is the son o  Brandon Farmer Sr.

12. Mr. Farmer was the sole financial provider or the Minor Children rom 2015 until February 27, 2024. The Farmer amily has maintained its primary residence in Milliken, Weld County, Colorado, or the past decade, and the Minor Children are enrolled in the Weld Re-5j school district.

**B. Defendants:**

13. Marissa Watson is, and at all times relevant hereto was, employed as a Social Worker II by LCDHS, acting under color o state law. She is sued individually and in her official capacity. Upon in ormation and belie , De endant Watson lacks the requisite pro essional license or certification to practice social work in Colorado, in violation o Colorado Revised Statutes § 12-245-201 et seq. and 12 CCR 2509-7.

14. Jeanna Zrelak is, and at all times relevant hereto was, employed as a Social Worker by LCDHS, acting under color o state law. She is sued individually and in her official capacity. Upon in ormation and belie , De endant Zrelak lacks the requisite pro essional license or certification to practice social work in Colorado, in violation o Colorado Revised Statutes § 12-245-201 et seq. and 12 CCR 2509-7.

15. Merrissa Scranton is, and at all times relevant hereto was, employed as a Social Worker Supervisor by LCDHS, acting under color o state law. She is sued individually and in her official capacity. Upon in ormation and belie , De endant Scranton lacks the requisite pro essional license or certification to practice social work in Colorado, in violation o Colorado Revised Statutes § 12-245-201 et seq. and 12 CCR 2509-7.

16. Denise Lajeunesse is, and at all times relevant hereto was, a Social Casework Manager within LCDHS. She is sued individually and in her official capacity.

17. Heather O'Hayre is, and at all times relevant hereto was, the Director o LCDHS. She is sued individually and in her official capacity.

18. Thomas Selken is, and at all times relevant hereto was, a court-appointed Guardian ad Litem ("GAL") or the Minor Children. He is sued individually and in his official capacity.

19. Jenni er Stewart is, and at all times relevant hereto was, a Senior County Attorney or Larimer County, acting under color o state law. She is sued individually and in her official capacity.

20. Linda Connors is, and at all times relevant hereto was, a Magistrate or Larimer County, presiding over dependency and neglect cases. She is sued individually and in her official capacity.

21. Larimer County Department o Human Services (LCDHS) is a department o Larimer County, Colorado, responsible or child wel are services in Larimer County. It is sued in its official capacity.

## IV. STATEMENT OF FACTS

This action exposes a systemic breakdown o justice, characterized by orchestrated abuse o power, deliberate abrication, and a pro ound disregard or the law and the undamental rights o parents and children by numerous state actors. As a result, the child-wel are process in Larimer County is **not neutral**, **not independent**, and **not constitutionally adequate**. Instead, it is a structurally biased system in which DHS, the County Attorney, the Guardian ad Litem ("GAL"), and court-appointed pro essionals operate as a **single, unified entity**, financially bound to DHS and aligned against parents. The MOU is not a peripheral detail — it is the **central mechanism** that enabled and encouraged the constitutional violations. It is a written, official policy o Larimer County and DHS, making the County liable under **Monell v. Department of Social Services**, 436 U.S. 658 (1978). The original proceedings were initiated against Mr. Farmers ex wi e or actions not relevant to Mr. Farmer. Once LCDHS ound out Mr. Farmers ex-wi e had 3 more children not in her care or control, LCDHS knowingly went out o their jurisdiction to include Mr. Farmer in the case. Mr. Farmer was unaware that his ex wi e was pregnant. Brandon Sr. was also unaware that LCDHS had initiated a case against him as well considering he never spoke with any case worker until the day a ter the emergency hearing. Brandon Sr. attended the emergency hearing on February 27th 2024 by Webex. The reason stated on record or the removal o KM and BC was:

1. The respondent Brandon Farmer , has subjected the children to mistreatment or abuse.
2. The children lack proper parental care through the actions or omissions o their parent, guardian, or legal custodian, Brandon Farmer Sr.
3. The respondent, Brandon Farmer Sr. has ailed or re uses to provide the children with proper or necessary subsistence, education, medical care, or any other care necessary or the children's health, guidance, or wellbeing.

Santosky v. Kramer, 455 U.S. 745 (1982)

The government must provide clear and convincing evidence be ore restricting parental rights.

On June 5th 2024 Jenni er Stewart acknowledged in an email and stated the ollowing,

" I am aware that the children's mother has been unable to care or the children or years ( and has in act didn't provide or them or saw them since B.C. was three) I am also aware that was because o her addiction. That le t you caring or your two children by yoursel . I am willing to have that be the sole basis or an admission that your children were in an "injurious environment". You would agree that the children were in an "injurious environment" because their mother was using substances and was not able to care or them and abandoned them. I you wanted to provide this actual basis or the admission to an adjudication – then I can tell the court that all the other allegations regarding you are being withdrawn".

Mr. Farmer did not agree to Stewarts offer or the act it was not true. Brandon Sr did not allow his children to be around their mother due to her being under the influence. Stewart and her clients retaliated against Mr. Farmer by abricating more allegations against him as well as twisting certain situations to appear as i Mr. Farmer was abusing his children. In the next email Mr. Farmers court appointed counsel reminds Jenni er Stewart that she will be filing a motion or lack o reasonable efforts by LCDHS. Counsel also will be filing a motion or protective orders prohibiting Watson and temporary guardians and anyone else rom continuing to engage in negative and obstructionist talk about Mr. Farmer because it is causing harm to the parent-child relationship. Also despite the agency having the in ormation to set up visits or Mr. Farmer since the start o the case, no effort has been made to allow Brandon Sr. to see or speak to his children. Counsel goes on to remind Stewart that that the alienation and obstruction needs to stop by the temporary guardians and caseworkers. Counsel urther reminds Stewart about when Stewart had to remind DHS to set up visitations a ter being ordered to previously but no efforts had even been made.

At all times relevant hereto, De endants possessed actual knowledge o the grievous nature o the circumstances and received explicit notice regarding their wrong ul conduct and the severe deprivations inflicted upon Mr. Farmer and his minor children. A Collaborative Memorandum o Understanding has been discovered that requires cooperation with LCDHS or lose unding. This agreement is

signed by Social services, The judicial district, health department, a non profit corporation  or mental health, school district, and other partners who agree. This agreement provides incentive based pay scales.

### A.  Unlawful Seizure and Deprivation of Parental Rights (February 27, 2024).

22. On or about February 27, 2024, De endants Zrelak and Stewart, acting in concert and under color o  state law, submitted  abricated documents to the Larimer County District Court during an emergency hearing.

23. These  abricated or misleading documents were instrumental in securing an order  or the immediate removal o  Plaintiff Brandon Sr.'s children  rom his care and the imposition o  a protection order against him.

24. At the time o  this emergency hearing, Mr. Farmer was not provided adequate notice, nor a meaning ul opportunity to be heard be ore an impartial decision-maker. No description o  an emergency or imminent danger was presented to justi y the removal, which is a severe measure reserved  or only the most compelling circumstances under Colorado law, C.R.S. § 19-3-405.

25. As a direct result o  De endants Zrelak and Stewart's actions and the  abricated or misleading documents, Plaintiff Brandon Sr. was unlaw ully deprived o  physical custody and communication with his children  rom February 27, 2024, until July 7, 2024.

26. The day AFTER the emergency hearing (February 28, 2024), De endant Zrelak made an unannounced visit to Mr. Farmer's home, appearing visibly agitated. Her interaction with Mr. Farmer was remarkably brie , concluding a ter approximately fi teen minutes, raising significant questions about the adequacy o  any investigation purportedly conducted.

### B.  Unlicensed or non-certified Social Workers and Fabricated Allegations

27. Investigations reveal that De endant Jeanna Zrelak does not possess a valid license or certification to practice social work in the State o  Colorado. The Colorado Department o  Regulatory Agencies (DORA) and its Division o  Pro essions have no record o  any such

credentials. This directly violates Colorado law, including but not limited to C.R.S. § 12-245-201 et seq. and **12 CCR 2509-7.**

28. Similarly, upon in ormation and belie , De endant Marissa Watson does not possess the requisite license or certification to practice social work in Colorado. DORA records confirm the absence o  her pro essional credentials.

29. Upon in ormation and belie , De endant Merrissa Scranton also lacks the requisite pro essional license or certification to practice social work in Colorado. DORA records confirm the absence o  her pro essional credentials.

30. The actions taken by these unlicensed noncertified individuals, including all decisions, recommendations, and interventions pertaining to the Plaintiffs' case, were per ormed without proper authority, were "ultra vires", and constitute a  undamental procedural irregularity and a violation o  the De endants' own established regulations and statutory obligations. This non-compliance directly prejudiced Plaintiffs and renders the actions taken by these De endants invalid.

31. On March 15, 2024, De endant Watson initiated contact with Plaintiff Brandon Sr. via text message. On March 21, 2024, De endant Watson, without personal knowledge or  actual basis (as she had not met Mr. Farmer until June 2024), transmitted a text message to Mr. Farmer  alsely accusing him o  illegal substance use and a history o  substance abuse.

32. De endant Watson subsequently incorporated these demonstrably  alse accusations into the official record o  Plaintiff Brandon Sr.'s case, thereby damaging his character and exerting undue influence over the proceedings.

33. Plaintiff Brandon Sr. possessed documented negative test results  or substance abuse, a  act known to Larimer County and, upon in ormation and belie , to De endant Watson, demonstrating her deliberate indifference to truth.

34. De endant Watson exhibited a pattern and practice o  submitting  abricated claims under oath. She  ailed to investigate properly, speaking only to members o  Mr. Farmer's ex-wi e's  amily, with whom he had no association, and intentionally  ailing to investigate Mr. Farmer himsel , thus depriving him o  his  undamental  amilial right to association and liberty interest.

35. When Mr. Farmer asked De endants Zrelak, Watson, and Scranton  or their licenses or certifications, he was told they did not possess them. Mr. Farmer's subsequent CORA request  or copies o  certificates, relevant phone records, and investigative documentation was met with obstruction and produced only reimbursements to caseworkers  or out-o -

state vacations, which revealed Jenni er Stewart and Heather O'Hayre's direct involvement in concealing evidence and obstruction.

### C.  Egregious Bias and Conflict of Interest by Magistrate Linda K. Connors

36. De endant Magistrate Linda K. Connors's actions demonstrate a pro ound disregard  or judicial impartiality and due process. Her 20-year history as an attorney  or LCDHS in dependency and neglect cases creates an undeniable and irreconcilable conflict o interest, directly violating Colorado Code o  Judicial Conduct, Rule 2.11, which mandates impartiality.

37. Magistrate Connors's past employment and ongoing close pro essional and personal relationship with County Attorney De endant Jenni er Stewart, including planning projects within the Larimer County Bar Association and women's law clubs, mani est as clear bias. This is not a mere appearance o  impropriety, but a systemic pattern where her rulings consistently aligned with LCDHS.

38. Magistrate Connors did not disclose her prior representation o  the very entities she now oversees as a Magistrate, nor did she offer to recuse hersel , ignoring multiple motions  or recusal filed by Mr. Farmer.

39. Magistrate Connors's receipt o  "partner o  the year" award  rom CASA o  Larimer County (an entity that o ten aligns with LCDHS in dependency and neglect cases)  urther cements this bias.

40. Magistrate Connors unlaw ully asserted jurisdiction over the case despite all parties—Brandon Sr. and his children—residing in Weld County, directly de ying Colorado Revised Statutes § 19-3-201, which dictates proceedings be held where the child resides or where abuse occurred. This constitutes a complete absence o  all jurisdiction over the matter.

41. Many court orders issued by Magistrate Connors lacked her signature and/or the state seal, rendering them inauthentic and void,  urther undermining the legitimacy o  the proceedings and constituting additional due process violations.

### D. Dereliction of Duty by GAL Thomas Selken

42. De endant Thomas Selken, as GAL, was appointed by the Court to conduct an independent investigation and advocate  or the best interests o  the Minor Children pursuant to Colorado Revised Statutes § 14-10-116.

43. Despite his legal duties, Mr. Selken consistently exhibited a demonstrable lack o  independent investigation and judgment. His interactions with the Minor Children and other parties were  requently conducted in the presence o  or under the direct influence o  De endant Watson.

44. Reports and recommendations submitted by Mr. Selken to the Court o ten mirrored the perspectives and findings o  Watson, without apparent independent verification or analysis.

45. The Minor Children repeatedly expressed dissatis action and distress, asserting that Mr. Selken and Watson  ailed to adequately listen to their concerns, wishes, and  actual accounts.

46. In ormation presented by Mr. Selken to the Court at times did not accurately reflect the children's statements, circumstances, or contained  abrications regarding their wishes.

47. Mr. Selken  ailed to diligently  ulfill his statutory and ethical duties by neglecting to establish contact with Brandon Sr., a key individual whose input was material to the children's wel are and the court's decision-making process.

### E. Abuse of Prosecutorial Role by County Attorney Jennifer Stewart

48. De endant Jenni er Stewart, as Senior County Attorney, submitted  alse statements to the courts and was involved in securing the initial removal order based on  abricated documents provided by Zrelak and signed by Scranton. The alleged claims were based off o  hear say  rom ex  amily or people not associated with Brandon Sr. The claims were nothing but boilerplate allegations that caused an assumption o  guilt towards Mr. Farmer.

49. De endant Stewart, in concert with Magistrate Connors, leveraged their prior pro essional relationship and Magistrate Connors's known bias to secure  avorable judicial outcomes against Mr. Farmer. This included Stewart being permitted to miss deadlines and

conduct objections via email, and the granting o temporary custody to special respondents known personally to Magistrate Connors.

50. De endant Stewart offered Mr. Farmer a "deal" to dismiss the remaining accusations i he would agree to an "injurious environment" finding, demonstrating an attempt to coerce Mr. Farmer into admitting to alse allegations.

51. De endant Stewart prepared a witness list or trial that included individuals, such as Mr. Farmer's sister, who were not involved in the case and had no knowledge o the proceedings. The abricated statement attributed to Mr. Farmer's sister alsely claimed she knew o his substance abuse, which his sister has denied ever providing or having knowledge o . This constituted an attempt to present raudulent evidence and deprive Mr. Farmer o a air trial and hearing.

52. De endant Stewart was directly involved with Heather O'Hayre in concealing evidence and obstructing Mr. Farmer's CORA requests regarding social worker credentials and case documentation.

### F.  Systemic Failures and Alienation of Minor Children

53. LCDHS deliberately separated Brandon Sr. rom his children rom February 27th 2024 to July 7th 2024, denying any and all contact, weaponizing his ex-wi e and her amily, and using his children as "bargaining tools." Even a ter these events Brandon Sr. was only allowed ONE visit per week or TWO hours.

54. The Minor Children K.M. and B.C. in ormed Mr. Farmer that caseworkers, including upon in ormation and belie , De endant Watson, alsely told them that their ather did not wish to see them and was angry with them, urther alienating the children rom their ather. This occurred regularly until Watson discontinued communication with Brandon Sr. August 2024. This was not an isolated incident. As soon as the caseworkers met the children they began to coerce and manipulate the situation by telling the children alse claims about their ather. The alienating had to be addressed routinely with the final time being in July through an email to Stewart.

55. De endant Watson deliberately ignored Mr. Farmer's concerns regarding the conduct o a temporary guardian, including an incident where the guardian's anger necessitated their physical removal rom K.M.'s room. This demonstrates a dereliction o pro essional duty and indifference to the children's wel are and Mr. Farmer's parental rights.

56. Most horri yingly, Minor Child B.C. Jr., underwent surgery without Mr. Farmer's knowledge or consent. This clear case o  medical battery and a breach o  fiduciary duty by LCDHS as temporary custodian is an egregious violation o  Mr. Farmer's parental rights and B.C. Jr.'s bodily autonomy. As o  todays date, the surgery was not success ul. B.C. now complains about pain regularly in his abdomen area.

57. On another occasion, Minor Child K.M. suffered a seizure at school and was taken to the hospital. Mr. Farmer was not notified until K.M. was already at the hospital. During the ambulance ride, K.M. began screaming  or her daddy. Mr. Farmer rushed to the hospital but was not allowed to see his daughter due to restrictions De endant Watson had put in place. Hospital staff attempting to contact Watson  or authorization were unsuccess ul.

58. In retaliation and to justi y the restrictions, De endant Watson  alsely stated in her report that Brandon Sr. appeared "under the influence" at the hospital, despite having no direct interaction with him at that time, as he was denied access to his daughter.

59. The combined actions o  De endants caused Mr. Farmer to lose a special bond with his children, experience severe anxiety, and a pro ound loss o  motivation. The Minor Children have expressed their desire to return home and their con usion regarding LCDHS's actions, including the abrupt removal  rom counseling.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS (Parental Rights and Familial Association)

60. Plaintiffs incorporate by re erence all preceding paragraphs as i  ully set  orth herein.

61. The Fourteenth Amendment to the United States Constitution protects the  undamental liberty interest o  parents in the care, custody, and control o  their children,  ree  rom unwarranted state inter erence. This right to  amily integrity and  amilial association is "perhaps the most  undamental o  all rights," Stanley v. Illinois, 405 U.S. 645, 651 (1972), and includes the right to make decisions concerning the companionship, care, custody, and management o  one's children, Troxel v. Granville, 530 U.S. 57, 65-66 (2000).

62. This right is clearly established. See Troxel, 530 U.S. at 65-66; Santosky v. Kramer, 455 U.S. 745, 753 (1982); J.B. v. Washington County, 127 F.3d 919, 925 (10th Cir. 1997) ("the

orced separation o parent rom child, even or a short time, represents a serious in ringement upon both the parents' and child's rights").

63. De endants Watson, Zrelak, Scranton, Lajeunesse, O'Hayre, Selken, Stewart, and Connors, acting under color o state law and in their individual and official capacities, deprived Plaintiffs o this undamental right through arbitrary, conscious-shocking, and oppressive state conduct.

64. Specifically, De endants' conduct that shocks the contemporary conscience includes, but is not limited to:

A. The removal o the Minor Children based on abricated documents and alse statements by Zrelak, Stewart, and Scranton, without a genuine showing o emergency or imminent danger and no investigation conducted to determine any actual basis.

B. The use o unlicensed noncertified social workers (Watson, Zrelak, Scranton) to conduct investigations, make recommendations, and influence court proceedings, rendering their actions "ultra vires" and undamentally illegitimate.

C. De endant Watson's repeated submission o alse accusations (e.g., substance abuse, eminent danger) into the official record despite contrary evidence, and her deliberate ailure to investigate Mr. Farmer.

D. De endant Connors's assertion o jurisdiction in clear contravention o C.R.S. § 19-3-201 and her ailure to recuse despite patent, irreconcilable conflicts o interest and pervasive bias, which corrupted the judicial process. See Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

E. De endant Selken's dereliction o duty as GAL by ailing to conduct an independent investigation, relying on Watson's biased input, ailing to contact Mr. Farmer, and misrepresenting the children's wishes.

F. De endant Stewart's submission o abricated evidence (witness list with alse statements), her use o a biased magistrate to gain un air advantage, her investigatory actions and her active concealment o social worker misconduct and lack o qualifications.

G. The deliberate separation o ather and children or months and now years, the active alienation o the children rom their ather through alse statements (by Watson and other caseworkers), and the imposition o punitive, unreasonable visitation restrictions.

H. The authorization o surgery on B.C. Jr. without Mr. Farmer's knowledge or consent, constituting medical battery and a violation o his parental rights to make medical decisions or his child.

I. The denial o  Mr. Farmer access to K.M. Farmer at the hospital  ollowing her seizure, based on restrictions imposed by Watson,  ollowed by Watson's retaliatory  alse claim that Mr. Farmer appeared "under the influence."

J. The collective malicious, reckless, and deliberately indifferent actions detailed herein, which created a system designed to deprive Mr. Farmer o  his children and inflict pro ound trauma, meeting the "shocks the conscience" standard. See County o  Sacramento v. Lewis, 523 U.S. 833, 846 (1998); Roberts v. Mentzer, 900 F.2d 1464, 1466-67 (10th Cir. 1990).

65. Each De endant, through their individual acts and/or  ailures to act, directly caused the deprivation o  Plaintiffs, clearly established substantive due process rights. On July 5th a 46 page "Notice o  Claim" was served on the Larimer County Commissioners detailing every violation and deprivation that was  orced on the Farmer  amily. The notice was only a ter many motions were filed mentioning these same violations but the motions were ignored or denied.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS

66. Plaintiffs incorporate by re erence all preceding paragraphs as i   ully set  orth herein.

67. The Fourteenth Amendment guarantees that no state shall deprive any person o  li e, liberty, or property without due process o  law. This right requires adequate notice, an opportunity to be heard at a meaning ul time and in a meaning ul manner, and a  air hearing be ore an impartial decision-maker. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

68. The right to procedural due process in child dependency and neglect proceedings, particularly be ore the removal o  children  rom parental custody, is clearly established. See Santosky, 455 U.S. at 753.

69. De endants Watson, Zrelak, Scranton, Lajeunesse, O'Hayre, Selken, Stewart, and Connors, acting under color o  state law and in their individual and official capacities, deprived Plaintiffs o  their procedural due process rights by:

A. Initiating the removal o  the Minor Children on February 27, 2024, without proper notice to Mr. Farmer or a meaning ul opportunity  or him to be heard, in  ront o  an impartial magistrate and without a legitimate showing o  emergency under C.R.S. § 19-3-405.

B. Utilizing  abricated documents and  alse statements (by Zrelak, Stewart, Scranton) as the basis  or the removal, thereby corrupting the  act-finding process  rom its inception. See Morris v. Dearborne, 181 F.3d 657, 672 (5th Cir. 1999) (violation o  procedural due process when  raudulent evidence used to remove children).

C. Conducting inadequate investigations and making recommendations through unlicensed or noncertified social workers (Watson, Zrelak, Scranton), whose actions were unauthorized and lacked the legitimacy required  or due process. Predetermined case plan was presented at first hearing based off o   alse or misleading in ormation.

D. Allowing De endant Magistrate Connors to preside over the case despite her mani est and undisclosed conflicts o  interest and pervasive bias, which rendered her incapable o being an impartial decision-maker, in violation o  Colorado Code o  Judicial Conduct, Rule 2.11, and the Fourteenth Amendment. See Caperton, 556 U.S. at 876.

E. De endant Selken's  ailure as GAL to conduct an independent investigation, to accurately represent the children's best interests, and to seek input  rom Mr. Farmer, directly undermining the  airness and impartiality o  the proceedings.

F. De endant Stewart's deliberate presentation o   raudulent evidence ( abricated witness statements) and manipulation o  the court process (leveraging Magistrate Connors's bias) to secure an un air outcome.

G.  The systemic  ailure o  LCDHS (under the supervision o  Lajeunesse and O'Hayre) to ensure that social workers were properly licensed or certified and trained, directly leading to due process violations through reliance on unqualified personnel and improper procedures.

70. These actions, individually and collectively, denied Plaintiffs the  undamental requirement o  a  air procedure be ore being deprived o  their pro ound liberty interest in  amily integrity.

**COUNT III: VIOLATION OF 42 U.S.C. § 1983 – MONELL LIABILITY (Against Larimer County Department of Human Services)**

71. Plaintiffs incorporate by re erence all preceding paragraphs as i  ully set  orth herein.

72. De endant Larimer County Department o  Human Services (LCDHS) is liable under 42 U.S.C. § 1983  or the constitutional violations alleged herein because these violations resulted  rom an official policy, custom, or practice, or  rom widespread and systemic

conduct directly attributable to the County and/or LCDHS, rather than isolated incidents. See Monell v. Department o  Social Services, 436 U.S. 658 (1978).

73. The unconstitutional policies, customs, and practices include, but are not limited to:

A. Official Policy/Widespread Custom o  Inadequate Investigation and Reliance on Fabricated Evidence: LCDHS maintains a pattern and practice o  conducting inadequate, biased, or non-existent investigations, and routinely relies on  abricated evidence and unsubstantiated hearsay rather than objective  acts. This includes the widespread acceptance and use o   alse in ormation provided by individuals like Watson, Zrelak, and Scranton.

B. Official Policy/Widespread Custom o  Utilizing Unlicensed/Uncertified Social Workers: LCDHS has a custom or policy, or at least a widespread practice, o  promoting and utilizing unlicensed or uncertified social workers (such as Watson, Zrelak, and Scranton) in critical roles, in direct contravention o  Colorado statutes (e.g., C.R.S. § 12-245-201 et seq.) and regulations (12 CCR 2509-7). This practice is actively concealed by supervisory staff, including Lajeunesse and O'Hayre.

C. Deliberate Indifference to Training and Supervision: LCDHS, under the ultimate responsibility o  O'Hayre and Lajeunesse, has demonstrated deliberate indifference by  ailing to adequately train, supervise, and discipline its employees regarding constitutional due process, proper legal standards  or child removal, ethical conduct, and the necessity o  licensure. This deliberate indifference was the "moving  orce" behind the constitutional violations. See City o  Canton v. Harris, 489 U.S. 378, 388 (1989).

D. Official Policy/Widespread Custom o  Obstruction and Concealment: There is a custom and practice within LCDHS and the County Attorney's office (as evidenced by Stewart and O'Hayre's actions) to obstruct transparency, conceal evidence, and deny legitimate CORA requests, particularly concerning social worker qualifications and case documentation.

E. Official Policy/Widespread Custom o  Prioritizing Expediency and Funding Over Rights: The violations detailed herein reflect a systemic tendency within LCDHS to prioritize the qualification o  cases  or Title IV-E  ederal  unding or to achieve predetermined outcomes, o ten without proper regard  or, and even in contravention o , the  acts and circumstances o  a given case and the constitutional rights involved. A predetermined case plan was presented on the very first court hearing.

F. Official Policy/Widespread Custom o  Tolerating Conflicts o  Interest and Bias: LCDHS, and Larimer County, have a custom or practice o  tolerating blatant conflicts o  interest,

such as those demonstrated by Magistrate Connors and County Attorney Stewart, which undermine judicial impartiality and due process.

74. These policies, customs, and ailures were the "moving orce" behind the constitutional deprivations suffered by Brandon Sr. and his children.

### COUNT IV: 42 U.S.C. § 1983 – CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

75. Plaintiffs incorporate by re erence all preceding paragraphs as i ully set orth herein.

76. De endants Watson, Zrelak, Scranton, Lajeunesse, O'Hayre, Selken, Stewart, and Connors (collectively, "Conspiring De endants") conspired to deprive Plaintiffs o their ederal rights, including their rights to amilial association, due process, and equal protection, in violation o 42 U.S.C. § 1983 highlighting the MOU agreement.

77. The Conspiring De endants, acting under color o state law, agreed to a course o action designed to effectuate the unlaw ul removal o the Minor Children rom Mr. Farmer's custody and to maintain that separation through raudulent means.

78. The acts alleged above demonstrate an agreement among the Conspiring De endants to achieve a predetermined outcome no matter the obstacle.

79.    De endants Watson, Zrelak, Scranton, Lajeunesse, O'Hayre, Stewart, Selken, and Connors, acting under color o state law, reached an agreement, ormally and in ormally, to deprive Plaintiffs o their clearly established constitutional rights, including the rights to amilial association, substantive due process, and procedural due process.

80.The existence o this agreement is demonstrated by the Memorandum o Understanding ("MOU"), executed by all institutional actors except the parents, which requires "cooperation," "coordination," and alignment with LCDHS policies as a condition o continued unding. This MOU constitutes direct evidence o a meeting o the minds among De endants to act jointly in child wel are cases in a manner that avors LCDHS and disadvantages parents.

81. The MOU created a **structural conflict of interest** that bound the GAL, county attorneys, social workers, supervisors, and court-appointed pro essionals to LCDHS objectives, thereby eliminating the independence required by law and ensuring coordinated action against Plaintiffs.

82. In furtherance o this agreement, De endants engaged in **overt acts**, including but not limited to:

**Fabricating evidence** and submitting alse statements to the court

**Using uncertified social workers** to conduct investigations and make recommendations

**Suppressing exculpatory information**

**Misrepresenting the children's wishes**

**Coordinating removal actions** without law ul basis

**Leveraging judicial bias** through Magistrate Connors

**Alienating the children** rom their ather through alse statements

**Authorizing medical procedures** without parental consent

**Obstructing CORA requests** to conceal misconduct and exculpatory evidence

**Copying and pasting terms specific to funding requirements with no details or evidence.**

Each o these acts was taken jointly, in coordination, or with knowledge and approval o the other De endants.

83. De endants' coordinated conduct satisfies the **joint action** and **meeting-of-the-minds** requirements or a § 1983 conspiracy. The MOU, combined with the pattern o coordinated misconduct, demonstrates that De endants acted "in concert" to deprive Plaintiffs o constitutional rights.

84. It was **foreseeable** and **intended** that this coordinated conduct would result in the unlaw ul removal o the children, the denial o due process, the use o abricated evidence, and the infliction o emotional and physical harm on Plaintiffs.

85. As a direct and proximate result o De endants' conspiracy, Plaintiffs suffered:

Loss o custody

Loss o amilial association

Emotional distress

Trauma

Loss o liberty interests

Medical harm to the minor child

Financial damages

86. The rights violated were **clearly established**, including:

The right to  amilial association (Troxel v. Granville; Santosky v. Kramer)

The right to be  ree  rom removal based on  abricated evidence (Devereaux v. Abbey; Pierce v. Gilchrist)

The right to an impartial tribunal (Tumey v. Ohio; Caperton v. Massey)

The right to procedural due process (Mathews v. Eldridge)

87. De endants are there ore liable under **42 U.S.C. § 1983**  or conspiring to deprive Plaintiffs o  their constitutional rights

## V: STATE LAW CLAIMS (Under Supplemental Jurisdiction)

88. Plaintiffs incorporate by re erence all preceding paragraphs as i  ully set  orth herein and bring the  ollowing state law claims under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## COUNT I: Negligence and Gross Negligence (Against Individual LCDHS Defendants and GAL Selken)

89. Plaintiffs incorporate by re erence all preceding paragraphs as i  ully set  orth herein.

90. De endants Watson, Zrelak, Scranton, Lajeunesse, O'Hayre, and Selken owed a duty o  care to Plaintiffs, arising  rom their pro essional roles and statutory obligations, to act reasonably, competently, and in good  aith in child wel are proceedings and to protect the best interests o  the Minor Children and the  undamental parental rights o  Mr. Farmer.

91.  These De endants breached their duty o  care through numerous negligent acts and omissions, including but not limited to:

A. Failing to possess requisite pro essional licenses or certifications (Watson, Zrelak, Scranton) in violation o  C.R.S. § 12-245-201 et seq. and 12 CCR 2509-7 and allowing them to operate in critical roles (Lajeunesse, O'Hayre).

B. Conducting inadequate or biased investigations, relying on  abricated evidence and hearsay, and  ailing to investigate Mr. Farmer or material  acts (Watson, Zrelak, Scranton, Selken).

C. Making  alse accusations and submitting  alse statements and documents to the court (Watson, Zrelak, Scranton).

D. Failing to properly supervise and train social workers (Lajeunesse, O'Hayre).

E. Failing as GAL to conduct an independent investigation, relying on biased input,  ailing to contact Mr. Farmer, and misrepresenting the children's wishes (Selken).

F. Authorizing or allowing unauthorized medical procedures on a minor child without parental consent (Watson, Lajeunesse, O'Hayre).

92. The acts and omissions o  these De endants constitute gross negligence, demonstrating a reckless disregard  or the Plaintiffs' rights and wel are, and a flagrant deviation  rom accepted pro essional and statutory standards.

93. As a direct and proximate result o  the De endants' negligence and gross negligence, Plaintiffs suffered severe injury, including the unlaw ul separation o   amily, emotional distress, loss o  liberty, and harm to their reputations.

**COUNT II: Intentional Infliction of Emotional Distress (Outrageous Conduct) (Against Individual Defendants)**

94. Plaintiffs incorporate by re erence all preceding paragraphs as i  ully set  orth herein.

95. De endants Watson, Zrelak, Scranton, Lajeunesse, O'Hayre, Selken, Stewart, and Connors engaged in extreme and outrageous conduct, including but not limited to  abricating evidence, submitting  alse statements to the court, unlaw ully seizing children, alienating children  rom their  ather, authorizing unauthorized surgery, and denying parental access.

96. These De endants acted recklessly or with the intent o  causing Plaintiffs severe emotional distress, or knew or should have known that severe emotional distress would likely result  rom their conduct.

97. The conduct o  these De endants was so extreme and outrageous as to go beyond all possible bounds o  decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

98. As a direct and proximate result o  the De endants' outrageous conduct, Plaintiffs have suffered, and continue to suffer, severe emotional distress, including pro ound anxiety, depression, loss o  motivation, and trauma.

COUNT III: Medical Battery (Against LCDHS, Watson, Lajeunesse, and O'Hayre)

99. Plaintiffs incorporate by re erence all preceding paragraphs as i   ully set  orth herein.

100. Minor Child B.C. Jr. is an individual with the right to bodily autonomy, and Mr. Farmer possessed the  undamental parental right to make medical decisions  or his minor child.

101. De endants LCDHS, Watson, Lajeunesse, and O'Hayre, as temporary custodians o  B.C. Jr., or in their supervisory capacity over those responsible, intentionally caused or allowed B.C. Jr. to undergo surgery without the knowledge or consent o  Mr. Farmer.

102. This unauthorized medical procedure constitutes medical battery against B.C. Jr. and an egregious violation o  Mr. Farmer's parental rights.

103. As a direct and proximate result o  this medical battery, B.C. Jr. suffered physical and emotional harm, and Mr. Farmer suffered severe emotional distress and the deprivation o  his right to make critical medical decisions  or his child.

**COUNT IV: Abuse of Process (Against Stewart, Zrelak, Scranton, and Connors)**

104. Plaintiffs incorporate by re erence all preceding paragraphs as i   ully set  orth herein.

105. De endants Stewart, Zrelak, Scranton, and Connors engaged in the will ul use o  the legal process in this dependency and neglect case  or an ulterior purpose not proper in the regular conduct o  the proceedings.

106. This ulterior purpose included, but was not limited to, securing the unlaw ul removal o  the Minor Children, coercing Mr. Farmer into admitting  alse allegations, preventing Mr. Farmer  rom having a  air hearing, and maintaining the Children in state custody

irrespective o  the  acts and the children's best interests, potentially  or  unding or predetermined outcomes.

107. The will ul acts in the use o  the process include submitting  abricated documents, manipulating witness lists, leveraging personal relationships  or judicial bias, asserting jurisdiction without law ul basis, and presiding over a case despite glaring conflicts o  interest.

108. As a direct and proximate result o  the De endants' abuse o  process, Plaintiffs suffered the unlaw ul separation o   amily, emotional distress, loss o  liberty, and the deprivation o  their constitutional rights to due process and  amilial association.

### COUNT V: Breach of Fiduciary Duty (Against Selken and LCDHS)

109. Plaintiffs incorporate by re erence all preceding paragraphs as i   ully set  orth herein.

110. As the court-appointed Guardian ad Litem, De endant Selken owed a fiduciary duty to the Minor Children to act in their best interests, conduct an independent investigation, and accurately represent their wishes and circumstances to the court pursuant to C.R.S. § 14-10-116.

111. De endant Selken breached this fiduciary duty by  ailing to conduct an independent investigation, relying instead on biased input  rom other De endants,  ailing to contact Mr. Farmer, and misrepresenting the children's wishes and  actual accounts to the court.

112. De endant LCDHS, as the temporary custodian o  the Minor Children, assumed a fiduciary duty to ensure their wel are and protect their rights, including the right to bodily autonomy and the right to parental consent  or medical procedures.

113. LCDHS breached this fiduciary duty by allowing or causing Minor Child B.C. Jr. to undergo surgery without Mr. Farmer's knowledge or consent.

114. As a direct and proximate result o  these breaches o  fiduciary duty, Plaintiffs suffered severe harm, including the deprivation o  their rights, emotional distress, and physical harm to the Minor Children.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Brandon Farmer SR., K.M. Farmer, and B.C. Farmer JR. respect ully pray that this Court enter judgment against the De endants, jointly and severally, and grant the  ollowing relie :

A. A declaration that De endants violated Plaintiffs' rights under the First, Fi th, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1985, and applicable state laws.

B. A declaration that the actions o  De endants, individually and collectively, constitute a pattern and practice o  misconduct designed to deprive parents and children o  their  undamental rights.

C. Preliminary and permanent injunctive relie  requiring De endants and LCDHS to cease all unconstitutional and unlaw ul practices identified herein, and to implement policies, training, and oversight to ensure compliance with constitutional mandates and state law, including proper licensing and supervision o  social workers, impartial judicial proceedings, and respect  or parental rights.

D. Compensatory damages in an amount to be determined at trial  or the severe emotional distress, physical harm, loss o   amilial association, loss o  liberty, and other injuries suffered by Plaintiffs.

E. Punitive damages against each individual De endant in their individual capacities, in an amount sufficient to punish their egregious conduct and deter similar misconduct in the  uture.

F. An award o  reasonable attorneys'  ees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws.

G. Mr. Farmer would like the remainder o  the CORA request that he requested and paid  or. Mr. Farmer requested case relevant investigative reports, internal communications relative to his case, external communications relative to his case, decision making records, supervisor records relavint to the case, and any  unds reimbursed to case workers as well as any bonuses to case workers.

G. Such other and  urther relie  as this Court deems just and proper.

**RELEVANT CASE LAW:**

In other words, a juvenile judge's decision on whether or not to issue a warrant is a legal one, it is not based on "best interest o  the child" or personal  eeling. The United States Supreme Court has held that courts may not use a different standard other than probable cause  or the issuance o  such orders. Griffin v. Wisconsin, 483 U.S. 868 (1987 nd ). I  a court issues a warrant based on an uncorroborated anonymous tip, the warrant will not survive a judicial challenge in the higher courts. Anonymous tips are never probable cause. "[I]n context o  a seizure o  a child by the State during an abuse investigation . . . a court order is the equivalent o  a warrant." (Emphasis added) Tenenbaum v. Williams, 193 F.3d 581, 602 (2 Cir. 1999 ). F.K. v. Iowa district Court  or Polk County, Id ."

**Hurlman v. Rice, (2nd Cir. 1991**) The mere possibility or risk o  harm does not constitute an emergency or exigent circumstance that would justi y a  orced warrantless entry and a warrantless seizure o  a child.

***Quilloin v. Walcott, 434 U.S. 246, 255, (1978***) A due-process violation occurs when a state-required breakup o  a natural  amily is  ounded solely on a "best interests" analysis that is not supported by the requisite proo  o  parental unfitness.

**Giozza v. Teiman, 148 U.S. 377,382 (1894)** "Due process o  law and the equal protection o  the laws are secured i  the laws on all alike, and do not subject the individual to an arbitrary exercise o  the powers o  government."

**Walsh v. Erie County Department of Job and Family Services 240 F. Supp. 2d 731 (N.D. Ohio 2003)** Child protection social workers claimed they were immune  rom liability in a civil violation (4th Amendment) suit, claiming qualified immunity because "they had not had training in Fourth Amendment law." They  elt they couldn't be sued  or their mistake, because they thought they were not binded by the Fourth Amendment. The court disagreed ruling "That subjective basis  or their ignorance about and actions in violation o  the Fourth Amendment does not relieve them o  the consequences o  that ignorance and those actions." and denied their immunity. 3:01-cv-7588

**J.B. v. Washington County (10th Cir. 1997)**
The forced separation of parent from child, even for a short time (in this case 18 hours), represents a serious infringement upon the rights of both.

**Brokaw v. Mercer County (7th Cir. 2000)**
Child removals are "seizures" under the Fourth Amendment. Seizure is unconstitutional without court order or exigent circumstances. Court order obtained based on knowingly false information violates fourth amendment.

**Wooley v. City of Baton Rouge (5th Cir. 2000)**
Defendants could not lawfully seize child without a warrant or the existence of probable cause to

believe child was in imminent danger of harm.

Where police were not informed of any abuse of the child prior to arriving at caretaker's home and found no evidence of abuse while there, seizure of the child was not objectively reasonable and violated the clearly established Fourth Amendment rights of the child.

**Malik v. Arapahoe Cty. Department of Social Services (10th Cir. 1999)**

Absent extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures.best interest of the child" without supporting facts and a legal basis is insufficient to support a Court order based on reasonableness or any other ground."

**North Hudson DYFS v. Koehler Family (2001)**

The court explained "absent some tangible evidence of abuse or neglect, the Courts do not authorize fishing expeditions into citizens' houses. Mere parroting of the phrase "best interest of the child" is not sufficient.

**Elrod v. Burns, 427 U. S. 347, 373 (1976)**

"The loss o  First Amendment  reedoms,  or even minimal periods o  time, unquestionably constitutes irreparable injury."

**Boyd V. United States, 116 US 616 P.2 P.3**

"It is the duty o  the courts to be watch ul  or the Constitutional rights o  the citizen and against any stealthy encroachments thereon."

**Byars v. U.S., 273 U.S. 28, 32 (1927)**

Constitutional provisions to be liberally construed, and "it is the duty o  courts to be watch ul  or the constitutional rights o  the citizen, and against any stealthy encroachments thereon

**Hale v. Henkel, 201 U.S. 43 (1906)**

"We are o  the opinion that there's a clear distinction between an individual and a corporation. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State. He owes no such duty to the State, since he receives nothing there rom beyond the protection o  his li e and property. His rights are such as existed by the law o  the land long antecedent to the organization o  the State and can only be taken  rom him by due process o  law, and in accordance with the Constitution.

**Marbury v. Madison, 5 U.S. 137**

Constitution is the Supreme Law o  the land. Any law in conflict is null and void.

**Sherar v. Cullen, 481 F.2d 945**

"There can be no sanction or penalty imposed upon one because o  this exercise o  constitutional Rights."

**Troxel v. Granville, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060 (2000**)

The U.S. Supreme Court has repeatedly held that parents have a undamental right to make decisions as to the companionship, care, custody, and management o their children, which right is a protected liberty interest under the due process clause o the Fourteenth Amendment

## VII. JURY DEMAND

## Plaintiffs hereby demand a trial by jury on all issues so triable.

PLAINTIFFS DEMAND ALL RIGHTS AT ALL TIMES AND WAIVE NONE EVER

Dated: January 7, 2026

Respect ully submitted,



_____

Brandon Farmer Sr.,

332 S. Kathleen Ave. #2

Milliken, Co, 80543

(970) 408-1659

FinelineLLC2025@outlook.com

Plaintiff, Pro Se

Date_____          Clerk o  Court_____

Case No. 1:26-cv-00118-TPO    Document 1    filed 01/12/26    USDC Colorado    pg 27 of 27